Edward R. **WILLIAMS** and Julia Lee Cox Williams for Themselves and Doing Business as Williams Engineering Company, a Partnership, Appellants,

v.

**THE BABCOCK & WILCOX COMPANY** and Republic Steel Corporation.

No. 12637.

United States Court of Appeals Third Circuit.

Argued Nov. 6, 1958.

Decided Jan. 7, 1959.

Rehearing Denied Feb. 5, 1959.

Loyal H. Gregg, Pittsburgh, Pa., William H. Parmelee, Elmer S. Utzler, Christy, Parmelee & Strickland, Pittsburgh, Pa., of counsel (Gregg & Price, Pittsburgh, Pa., on the brief), for appellants.

Inzer B. Wyatt, New York City (Robert L. Kirkpatrick, John K. Tabor, Kirkpatrick, Pomeroy, Lockhart & Johnson, Pittsburgh, Pa., Sullivan & Cromwell, New York City, on the brief), for appellees.

Before MARIS, GOODRICH and KALODNER, Circuit Judges.

MARIS, Circuit Judge.

The question on this appeal is whether the District Court for the Western District of Pennsylvania erred in finding that the defendants, Babcock & Wilcox Company and Republic Steel Corporation, had not wrongfully breached their agreement with the plaintiffs, Edward R. Williams and Julia Lee Cox Williams doing business as Williams Engineering Company,[1] and that the plaintiffs were not entitled to the equitable relief they sought. The undisputed facts are these:

The plaintiff Edward R. Williams, an inventor, had done considerable research and experimental work in continuous casting of molten metals, as a result of which prior to July 15, 1941 he owned both United States and foreign patents in this art. Continuous casting has been successfully used in processing non-ferrous metals such as copper, brass and aluminum. The successful application of continuous casting to steel has been of immense interest to the steel industry for many years as it would reduce operating costs, eliminate the need for expensive equipment, and would avoid the high losses of metal which are involved in the several production steps required in conventional processing. The defendant Republic Steel Corporation, a large producer of steel, entered into an agreement with Williams in 1941 pursuant to which it conducted experimental work in this field under a license from Williams. In 1943 Republic entered into a supplemental agreement with Williams which provided that defendant Babcock & Wilcox Company, a producer and user of ferrous metals, would collaborate in conducting experiments in this field. A small experimental casting unit was installed by Babcock & Wilcox at its plant at Barberton, Ohio. Thereafter, Republic gave Wil-

1. The agreement here involved was entered into by the plaintiff partnership consisting of plaintiff Edward R. Williams and his wife as owners of the patents issued to plaintiff Edward R. Williams for the process and apparatus for continuous casting. The plaintiff Edward R. Williams is the party actively concerned in the dealings with the defendants.

liams notice of termination of the 1941 and supplemental agreements.

On June 1, 1946 the parties entered into the agreement here involved in which it was stated that Babcock & Wilcox desired to establish the continuous casting of metals on a production basis. The parties conveyed all their rights under patents involving continuous casting for their mutual use and for the development of the process. Babcock & Wilcox agreed to install in its plant at Beaver Falls, Pennsylvania, an apparatus which would serve as a demonstration unit on a commercial or semi-commercial scale of the practicability of continuous casting. Access for inspection of the installation and of operating records was to be available to the parties. Babcock & Wilcox further agreed "to use its best efforts to exploit and license a continuous casting process covered by the patent rights of the parties." Royalty-free licenses were granted by the agreement to each of the parties for their own production for the full term of the licensed patent rights unaffected by any termination of the agreement.

It was further agreed that the use royalties obtained from sublicensees would be divided between the parties. Williams was in any event to receive annual payments of $7500 retroactively from June 1, 1946 to November 12, 1944, and $10,000 per year until December 31, 1948. In addition, Williams was to receive 33⅓% of the gross use royalties, the total payment not to exceed $25,000 until the gross use royalties exceeded $227,000, when he would receive 11% of the gross use royalties annually. The expense of the project was to be borne by Babcock & Wilcox and Republic. Williams was to act as a consultant on a part time basis upon request in writing by Babcock & Wilcox. The agreement was terminable under several paragraphs but only paragraph 16 is here pertinent. Paragraph 16(a) gave Williams the right to cancel during the years 1949, 1950 and 1951 under the following circumstances:

"(a) In the event Williams shall receive as his share of the gross use royalties collected by B. & W. for the calendar year 1949 an amount not exceeding $10,000., or an amount not exceeding $15,000. from the gross use royalties collected by B. & W. for each of the calendar years 1950 and 1951, Williams may, by a notice in writing served on Republic and B. & W. within sixty (60) days after the end of the corresponding calendar year, terminate this agreement, and such termination shall become effective thirty (30) days after receipt of such notice unless Republic and/or B. & W. shall within said thirty (30) days pay to Williams a sum equal to the difference between the royalties paid to Williams and the minimum amount named herein for the corresponding calendar year."

No licenses were granted during 1949, 1950 and 1951 and Williams did not receive any payments but nonetheless did not exercise his right to terminate the agreement. His principal patent and some of his foreign patents had expired by 1954. Under paragraph 16(b) any of the parties, after the year 1952, had the following termination rights:

"(b) In the event the gross use royalties collected by B. & W. from sublicensees for the calendar year 1952, or for any calendar year thereafter does not exceed $75,000., then any of the parties may, by a notice in writing served on the other parties within sixty (60) days thereafter, terminate this agreement, and such termination shall become effective thirty (30) days after receipt of such notice."

No licenses were granted during the years from 1952 to 1955. In March 1955 the defendants decided that negotiations should be initiated for a surrender of Williams' rights under the agreement. The plaintiffs were approached with the proposition that they accept $3000 annually over a period of 10 years for their interest in the agreement, which was rejected. The defendants then proposed a new agreement but its terms were not

acceptable to Williams. On July 5, 1956 [2] defendants gave notice of termination of the 1946 agreement for lack of royalties during 1955.

The plaintiffs thereupon brought this action for an injunction against the termination of the agreement and to prevent the defendants from enjoying any benefits from the continuous casting process except pursuant to the agreement. In the alternative, the plaintiffs claimed damages in the amount of $806,000 resulting from defendants' alleged waste or conversion of the plaintiffs' property in the patents. Jurisdiction was based upon diversity of citizenship. The case was tried to the court without a jury. It was undisputed that the defendants had the legal right to terminate the agreement under paragraph 16(b) but the plaintiffs sought to invoke the equitable powers of the district court upon the grounds that the plant erected by Babcock & Wilcox at Beaver Falls had in fact been operated successfully on a commercial production basis since 1952 but that Babcock & Wilcox had wrongfully refrained from granting licenses, that the plaintiffs refrained from exercising their right to terminate the agreement and recapture their patents in reliance upon the defendants' assurances of imminent licensing, that the defendants' experiments were directed toward their own needs rather than commercial exploitation, and that the lack of gross royalties was due to the defendants' own delay, lack of diligence and ineffective experimental program. The district court decided first to try the plaintiffs' claim that the Babcock & Wilcox plant had been operated successfully since 1952 and that the defendants could have, and should have, secured licenses for the commercial exploitation of the process and collected at least $75,000 in gross use royalties during that year. The plaintiffs' case was based in large part upon documents, including records of casting heats, and statements by defendants' executive officers and other representatives to Williams or which appeared in letters, advertisements and publications. The matter was highly technical and the record voluminous. The district court in its opinion analyzed the evidence at length and found as a fact that the defendants had acted in good faith in attempting to develop the process, that their large expenditures for the operation of the experimental plant negated the charge of waste of the patents, and that the process had not in fact reached the point of commercial utility or success where Babcock & Wilcox should in good faith have offered the process to the public for licensing. Judgment was entered for the defendants and this appeal by the plaintiffs followed.

The plaintiffs urge in this court that the defendants were estopped from terminating the agreement, that the process was ready for licensing but that the defendants had not tried in good faith to grant licenses and that the defendants conspired to obtain the fruits of the enterprise for their own benefit. The basic issue here is whether the contrary findings of fact with respect to these matters which were made by the district court were clearly erroneous. For a finding of fact will not be disturbed on appeal unless it is clearly wrong, due regard being had for the opportunity of the trial judge to observe the demeanor of the witnesses while testifying, to appraise their credibility and to determine the weight to be given their testimony. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. A court of appeals does not retry a case or substitute its own judgment for that of the district court on factual issues. Hudspeth v. Esso Standard Oil Co., 8 Cir., 1948, 170 F.2d 418, 420. Nonetheless, a finding may be set aside on appeal if, although supported by some evidence, the reviewing court upon considering all the evidence is left with the definite and firm conviction that a mistake has been made by the fact finder. United States v. United States Gypsum

---

2. It appears that by supplemental agreement the parties extended the time for serving notice of termination in 1956.

Co., 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746.

■ The plaintiffs assert that the court clearly erred in finding no factual basis for concluding that the defendants were estopped from terminating the agreement because, upon their assurances of imminent licensing, the plaintiffs did not earlier terminate the agreement themselves and recapture their patents. The plaintiffs rely in this connection upon writings which they say are of "such a nature as to induce a reasonable person to believe that licensing was imminent and for such reason forbear cancellation." We have carefully examined these documents. Most of them are letters from Isaac Harter, Sr., and his son, Isaac Harter, Jr., of Babcock & Wilcox, who were engineers in charge of the project. They speak with confidence that the casting operation was proceeding in fine form and that licensing would begin "before the end of the year" and "in six months". There also is a letter written by patent counsel J. P. Moran in respect to an extension of the Williams British Patent No. 489,568, a copy of which was sent to Williams, which in pertinent part stated:

"The continuous casting development work of the Babcock & Wilcox Company at Beaver Falls, Pennsylvania, has now reached the stage at which that company is willing to license other steel producers under the process and to guarantee the results obtainable with the continuous casting of carbon steel billets. This work has been discussed with several prospective licensees, and it is expected that one or more licenses will be consummated in the near future."

The district court found that Williams relied on the expressions of hope of the defendants' representatives, particularly the Harters, that success would be achieved but that the evidence would not support a finding that a promise had been made by the defendants which should reasonably be expected to induce the plaintiffs to refrain from terminating the

contract. Restatement, Contracts, § 90; Fried v. Fisher, 1938, 328 Pa. 497, 196 A. 39, 115 A.L.R. 147. We agree with the district court in this regard.

The plaintiffs complain that the district court excluded evidence as to the reasons why Williams did not cancel the contract. The record does not bear out this complaint. For these reasons are fully given by Williams himself in a memorandum written by him under date of August 14, 1950 which was received in evidence, as follows:

"Mr. Harter feels that Republic will start on new commercial unit by winter and are pushing B & W to let them go ahead. The proof on 4 × 27 slab will be the starting point but Republic will probably cast 4 × 40 in first unit. Harter says that others will be licensed as soon as Republic starts so that licenses and royalties should begin in 1951. I didn't bring up fact that I had received no income from them in 1949 or so far in 1950 and that I could cancel agreement unless they paid but that I had decided this was not the spirit of the agreement and decided to wait and take my chances and not ask them for any income until royalties started. They did not mention this either but Ike seemed a little worried that I might bring it up as he was more than anxious to pay my traveling expenses when I raised this question."

Perhaps the most that can be said for plaintiffs' argument on this point is that the defendants did not share with the plaintiffs the spirit of the agreement. On this record we cannot hold that the district court was wrong in finding that the defendants were not estopped by any representations or promises made to the plaintiffs from terminating the agreement under paragraph 16.

■ The plaintiffs' next contention is that the court erred in finding that the defendants acted honestly and in good faith in the attempt successfully to develop the patented process and exploit it by licensing and did not improperly direct

their efforts instead to adapt the process for Republic's special needs. The district court reviewed the reports of the many successive casting heats made in the Beaver Falls experimental plant and found that, while some did indicate the production of good steel, the cost and waste of the operations kept the process from reaching the point of commercial feasibility where Babcock & Wilcox should in good faith have offered it to the public for licensing. The plaintiffs urge that the process was ready for licensing to small non-integrated companies for the production of carbon steel billets and a limited number of alloy steels in cross sections up to 50 square inches by the year 1952 and that Babcock & Wilcox accordingly had opportunities to license but improperly refrained from doing so. We have examined the record and find that although there were inquiries and interest was expressed in the process there is no support for plaintiffs' contention that the defendants had on several different occasions the opportunity to grant licenses of which they did not avail themselves. On the contrary, so far as the record shows, none of these requests materialized to the stage of license negotiations and there is ample support in the record for the district court's finding that the process was then still in the experimental stage.

The plaintiffs rely on Neenan v. Otis Elevator Co., 2 Cir., 1912, 194 F. 414, in support of their position that the defendants breached their agreement to exploit the patents by licensing. The Neenan case, however, is distinguishable from this case in that there the district court found as a fact that the test made by defendant of the patented apparatus was satisfactory, and that the failure of the defendant to make use of the invention was a violation of the contract. The Court of Appeals stated [194 F. 414, 420]:

"* * * It was the duty of the defendant to test the apparatus with reasonable diligence and if the tests were satisfactory to install it within such reasonable time as was conven-ient. It did test the apparatus and found it satisfactory, but has wholly neglected to put it into practical use. Its conduct in this regard seems to indicate a purpose not to use the patented improvements but to prevent rivals in business from acquiring them."

■ The plaintiffs also contend that the court erred in not finding that the defendants had conspired to obtain the process for their own benefit. Under the agreement Republic was entitled to use the process in its own plant. The plaintiffs say that 3½ years were spent by the defendants in trying to adapt the process to Republic's use. But the district court found that experiments were being conducted in smaller size molds than those used by Republic during this entire period. This finding has support in the evidence. Thus it does not appear that the work at the Beaver Falls plant was conducted solely to perfect the process for Republic. On the contrary, the evidence shows that Williams was apprised of the fact that experimentation was being carried on also for Republic and he made no objection. The district court found that in August, 1950, the Harters explained to Williams that if a 4 x 27 inches slab could be "proved out" they felt that Republic would start a new commercial unit and that others would be licensed as soon as Republic started. We agree with the district court that the evidence does not support the plaintiffs' charge of improper conduct by the defendants in this regard.

■ Finally the plaintiffs contend that the district court erred in deciding that they first had the burden of proving commercial success. This contention is wholly without merit. This issue was basic to the plaintiffs' case. Indeed, one of the averments in the complaint was that the plant at Beaver Falls has been operated successfully and on a commercial production basis since 1952. It is clear that the plaintiffs had the burden of showing this to be the fact in order to pave the way for their requested finding that Babcock & Wilcox had failed to li-

cense the process although it was ready for commercial exploitation by the public.

The other contentions of the plaintiffs need not be discussed. It is sufficient to say that we have examined them and find them wholly without merit.

The judgment of the district court will be affirmed.