Robert POWELL and Elizabeth W. Lawrence, United States of America (Intervening Plaintiff)

v.

PENNSYLVANIA RAILROAD COMPANY, George M. Harrison, Individually and as Grand President of The Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees; and S. V. W. Loehr, General Chairman, Individually and as General Chairman of The Pennsylvania System Board of Adjustment; The Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees,

Robert Powell and Elizabeth W. Lawrence, Appellants in No. 12,696.

The Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, Appellant in No. 12,721.

Nos. 12696, 12721.

United States Court of Appeals Third Circuit.

Argued Jan. 22, 1959.

Decided May 27, 1959.

Lawrence J. Richette, Philadelphia, Pa., for appellants Robert Powell et al.

Walter Biddle Saul, Philadelphia, Pa., for appellants Brotherhood of Railway and Steamship Clerks, etc., et al.

Before KALODNER and HASTIE, Circuit Judges, and EGAN, District Judge, sitting specially.

EGAN, District Judge.

The principal question presented by these appeals is whether the amount allowed by the Court below to counsel for plaintiffs in a class action is inadequate to compensate them for the services performed.

On June 8, 1956 the individual plaintiffs, employees during the years 1944 to 1948 of the Pennsylvania Railroad Company and at the same time members of The Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, brought a class suit on behalf of themselves and others similarly situated against the two last named and another,[1] to collect for loss of overtime which they claimed was due under an award[2] made in their favor in January 1949 by The National Adjustment Board.

On the complaint of The Brotherhood, the Adjustment Board found, in substance, that during the month of March 1944 and thereafter until March 1948, the Railroad wrongfully and in violation of the Collective Bargaining Agreement between the parties dated May 1, 1942, retained the Pilot Contracting Company, a private labor contractor, to supply employees for work at the Philadelphia Transfer Freight Station, the South Philadelphia Freight Station and other facilities of the Philadelphia Terminal Division. The Board also ordered the Railroad and the Brotherhood to determine which of the Railroad employees were available and had been deprived of the right to work, and after such determination, to pay them.

From January 1949 to June 1956, comparatively little was done to bring about an adjustment of the matter except that the Railroad offered $5,000 in settlement to The Brotherhood and it was rejected.

After an abortive attempt to settle the case out of Court because The Brotherhood would not agree to the terms, the plaintiffs brought this suit in June 1956 against The Brotherhood and the Union for wilful failure to effectuate the Award. Further negotiations were carried on and this time terms of settlement were agreed upon and a written stipulation dated September 9, 1957 was entered into by counsel for all remaining parties to the action.

Under its terms, the Railroad agreed to and did pay $300,000 into Court in settlement of the class action, plus $25,000 (any unused portion of which was to be recaptured) to cover expenses; and the Court undertook to determine who were the members of the class.

Pursuant to stipulation, the action against the Railroad was dismissed with prejudice but the action against The Brotherhood and its named officers remained open pending payment of the determined sums to the employees entitled to share.

After the matter was thus concluded by stipulation, the attorneys for the

---

1. S. V. W. Loehr, General Chairman individually and as General Chairman of the Pennsylvania System Board of Adjustment, who dropped out when the case was settled by payment of the consideration into Court.

2. Award 4292.

plaintiffs requested the allowance of counsel fees and the reimbursement of expenses. Presumably the latter was accomplished and is not an issue here, unless there is an unpaid balance properly due. Following a hearing, the Court awarded plaintiffs' counsel $30,000 less $15,000 paid during the proceedings. The latter, having claimed $100,000 (one-third of the fund) were disappointed, filed exceptions thereto and filed this appeal by permission of this Court (No. 12,696).

The Brotherhood, arguing that the counsel fee of $30,000 is more than ample and that the allowance is final and non-appealable under the stipulation, filed its cross appeal (No. 12,721).

Appellants in No. 12,696 seemed to indicate in the Court below and in their brief in this Court that they were basing their claim on a contractual basis because they had received several hundred valid powers of attorney from among as many claimants in the class affected that the latter would be willing to pay to counsel one-third of the amount recovered, aside from expenses. They changed this at the argument on appeal when they said they were basing their claim on equitable principles and that they regarded the one-third amount stated in such powers of attorney as evidence of what the affected employees—or a large number of them at any rate—regarded as a measure of fairness.

This latter theory is consistent with that set forth in the complaint.[3] "As a result of defendant Brotherhood's wilful failure to comply with said award and order plaintiffs (and) all other(s) similarly situated were compelled to retain counsel to enforce the said award and accordingly retained (the named appellants) as such attorneys. Plaintiffs have promised and agreed to pay the said attorneys a sum of money equal to the fair and reasonable value of their legal services, and said attorneys are entitled to such compensation under the provisions

of Section 3(p) of the Railway Labor Act,[4] and plaintiffs and others similarly situated are entitled to have such attorneys' fees taxed and collected as part of the costs of the suit, if they should prevail in this action."

The lower Court based its findings on equitable rather than contractual principles.

The landmark case on the subject in American Jurisprudence is Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157. There Mr. Justice Bradley, speaking for the Court (105 U.S. at pages 532, 533, 26 L.Ed. 1157) said:

"* * * It is also established by sufficient authority that where one of many parties having a common interest in a trust fund, at his own expense takes proper proceedings to save it from destruction and to restore it to the purposes of the trust, he is entitled to reimbursement, either out of the fund itself, or by proportional contribution from those who accept the benefit of his effort."

That doctrine is just as vigorous today as when it was announced. It has been broadened to met many new situations. Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184; Clackamas County v. McKay, 94 U.S.App. D.C. 108, 219 F.2d 479; Lafferty v. Humphrey, 101 U.S.App.D.C. 222, 248 F.2d 82.

Pennsylvania is in accord with the Federal rule. Hempstead v. Meadville Theological School, 286 Pa. 493, 134 A. 103, 49 A.L.R. 1145.

We proceed now to a consideration of the facts of this case. We shall do so under two headings—(1) the obtaining of the award and (2) the creation of the fund.

As to (1) the appellants concede that the Brotherhood is entitled to full credit for obtaining the award. They also admit they had nothing to do with the filing

---

3. Par. XVIII, p. 19, appendix to plaintiffs' brief.

4. 45 U.S.C.A. § 153 [, subd. 1] (p).

of the grievance on which the award was based. Therefore this element should be excluded in making an allowance to plaintiffs' counsel.

As to (2) the appellants claim that their efforts alone produced the fund. The order of the Adjustment Board was dated January 25, 1949 and no payments under it were made to anyone until this suit was started more than seven years later. "Then the Railroad deposited $300,000 (plus $25,000 for costs) with the clerk of the court pursuant to a stipulation agreed to by all parties to this action, which provided among other things that 'the Court by appropriate proceedings will determine the claimants entitled to share in the $300,000 fund' ".[5] [166 F.Supp. 450] The Court also stated, "I think there is no doubt that these petitioners were instrumental in transmuting the Railroad's liability to pay into money and so creating the fund."[6]

The parties to these proceedings, at various times, took conflicting positions with respect to whom they represented. Thus the Brotherhood contended that it represented only its members and not those employees who were not members of the union. Later it shifted its position and admitted that it represented all the employees at the two freight stations in question, whether members of the union or not, i. e. the entire craft. It is likely that this change in position was brought about by the decision of the Supreme Court on November 18, 1957 in Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80.

While counsel for plaintiffs should have known that when they undertook to represent members of a class of claimants, they represented the entire class and not a segment thereof they shifted their position from time to time. They finally acceded to the position taken by the Court as well as the Brotherhood and agreed that they represented the entire class. See Kirby v. Pennsylvania R. Co.,

3 Cir., 188 F.2d 793, opinion by Judge Goodrich.

At any rate, the Court below set both of the contending parties straight when it said:

"* * * I conclude that the intended beneficiaries of the award were those employed in job classifications doing work similar to the work done by the contractor's employees at either the South Philadelphia freight station or the Philadelphia Transfer during the times in question, whether they were members of the Brotherhood or not." (p. 20a, Brotherhood's brief.)

Since both parties were in *pari delicto* in this regard, the Brotherhood is in no position to argue in diminution of plaintiffs' counsel fee that at times the latter worked against or ignored some of the class it represented.

■ There is no doubt that in a controversy of this kind, the determination of the amount of allowance to counsel is within the discretionary power of the trial court, or on appeal, of the appellate court. However, neither the trial court nor the appellate court can, in arriving at a proper fee, arbitrarily ignore the undisputed evidence and the findings based thereon. Rule 52(a) F.R.Civ.P., 28 U.S.C. 7 C.J.S., Attorney and Client § 191 d, p. 1093. Nevertheless "a finding may be set aside on appeal if, although supported by some evidence, the reviewing court upon considering all the evidence is left with the definite and firm conviction that a mistake has been made by the fact finder." Williams v. Babcock & Wilcox Co., 3 Cir., 262 F.2d 253, at page 256; United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746.

For the reasons hereinafter stated, we are of the definite and firm conviction that a mistake has been made by the fact finder in this case.

---

5. Opinion dated March 7, 1958, Kirkpatrick, Ch.J., p. 15a, appendix to Brotherhood's brief.

6. Opinion dated June 24, 1958, Kirkpatrick, J., p. 6, appendix to appellants' brief.

No expert testimony was presented and the very able hearing Judge who heard this case from its inception said it was unnecessary. This is consistent with decisional law.

"While expert testimony, as to the value of an attorney's services, is admissible and should be given due weight, it is not conclusive either on the jury or the court, or, in case of appeal, on the appellate court, since the court, either trial or appellate, is itself an expert on the question, and may consider its own knowledge and experience concerning reasonable and proper fees, and, in the light of such knowledge and experience, the court may form an independent judgment, from the facts or evidence before it, as to the nature and extent of the services rendered, and make an appraisal of such services and determine the reasonable value thereof, either with or without the aid of the testimony of witnesses as to value." 7 C.J.S. Attorney and Client § 191 d, p. 1093.

Columbian National Life Insurance Co. v. Keyes, 8 Cir., 138 F.2d 382, certiorari denied 321 U.S. 765, 64 S.Ct. 521, 88 L.Ed. 1061.

The Court below awarded appellants a fee of $30,000, or 10% of the entire fund without attempting to evaluate the contributions made by the respective parties. We regard this as error. Certainly they are entitled to no portion of the fund which did not flow from their efforts. Our problem is to weigh the factors involved, determine the measure applicable to the respective parties in creating the fund and then to determine what shall be allowed to appellants as a fee.

■ Under the facts of this case, we think it reasonable to assign to the Brotherhood's effort in obtaining an award from the Railway Labor Board a weight of one-third or $100,000, no portion of which is payable to appellants.

Using comparable factors and considering all the facts, we think it clear that appellants' vigorous initiative for plaintiffs and subsequent suit breathed new life into a dormant and inert award, brought about a reality instead of a promise and thus created a fund.

No question has been raised as to the ability or capacity of appellants or as to their standing at the Bar. Objection of the Brotherhood to the payment of what appellants claim is reasonable compensation is based principally on the amount of time devoted to the case. It is undenied in the record that appellants did devote a considerable portion of their time during the more than four years they were in the case. Whether they used their time constructively in furtherance of the end result or less constructively in the solicitation of proxies which would give them a wider representation is a question that is debatable.

■ Be that as it may, however, the question of time is not the only element to be considered in a contingent fee case of this type where counsel helped to bring about a result and advanced the costs and expenses necessary to do so.[7]

---

7. In this regard Canon 12 of the Canons of Professional Ethics of the American Bar Association says: * * * "In determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations in itself is controlling. They are mere guides in ascertaining the real value of the service. * * *"

There have been cases in which it was contended that the case was a simple one and that there was little litigation or time spent. In Woodbury v. Andrew Jergens Co., D.C., 37 F.2d 749, 750, the Court stated that:

"The value of a lawyer's services is not measured by time or labor merely. The practice of law is an art in which success depends as much as in any other art on the application of imagination—and sometimes inspiration—to the subject-matter. The exercise of these faculties may occur at any stage in a case, though their influence on the course of the proceedings may not be established till its outcome. In order, therefore, accurately to chancer the value of a lawyer's services, one must almost always examine them in the light of the event."

See also Sampsell v. Monell, 9 Cir., 162 F.2d 4; In re Osofsky, D.C., 50 F.2d 925, 927.

If we were to suggest any addition to the quoted portion of Canon 12, we would add an observation made in Pamphlet #2 on the Economics of Law Practice Series sponsored by the American Bar Association to the effect that "the general level of fees has not kept pace with the cost of doing business and the cost of living." (p. 17.)

Appellants have referred to the much cited article by Horenstein in 39 Columbia Law Review, p. 784, as a guide to what the Courts have considered to be a fair measure of compensation to counsel in stockholders' derivative suits, which are issues usually handled on a contingent basis.

While the situations are somewhat comparable, we think that the case of Paris v. Metropolitan Life Insurance Co., D.C., 94 F.Supp. 356; Id., D.C., 94 F. Supp. 792, is more in point. That case grew out of a union relationship. Paris and others were members of the Industrial Insurance Agents Union employed by the Insurance Company. Petitioning counsel were counsel for the union. They represented the union, as well as its members, in some State Court and State Administrative body procedures, which resulted in a recognition by the State Labor Relations Board of the union as a collective bargaining unit, after having established the constitutionality of the New York State Labor Relations Act, McKinney's Consol.Laws, Labor Law, c. 31, § 700 et seq.

As a result of a hearing before the National War Labor Board at its regional offices, their services resulted in an order awarding the Industrial Insurance Agents employed by Metropolitan an increase of compensation of $2.85 a week retroactively. By agreement, the Insurance Company deposited the amounts payable as retroactive wages with an escrow agent. The amount so deposited amounted to $1,004,000, less amounts withheld for taxes and social security contributions, resulting in a net fund in the hands of the escrow agent of $792,-318.19.

The action in the Federal Court was in the nature of a class suit by Paris on behalf of himself and other Industrial Insurance Agents similarly situated for a determination of their rights in the fund. Counsel instituting the suit on behalf of Paris and others were at the same time counsel for the union. Notwithstanding this, District Judge Rifkind and later District Judge McGohey, allowed them compensation totaling $375,000, or approximately 37½% of the fund.

Taking into consideration all the facts of this case, we believe that an allowance of 30% of $200,000, or $60,000 to counsel for the class represented by the complainants would be a reasonable fee and one that should have been allowed in this case.

The Brotherhood argues that counsel for the plaintiffs below, who are the appellants here (No. 12,696), have no right to appeal; that they are concluded, and that the stipulation of settlement makes Judge Kirkpatrick's opinion final. They base their argument on the provision that the Court "will determine the claimants

entitled to share in the $300,000 fund" [166 F.Supp. 450] and that—

"(b) All parties agree that the amount determined by the Court as said damages in each case shall be final, without any right of appeal, or motion for rehearing, exceptions or further proceedings, all of which are hereby waived * * *."

In our opinion, this is a *non-sequitur*. The word "claimants" as there used referred to those employees of the Pennsylvania Railroad who were eventually to share in the fund and not their counsel. This is clear from Judge Kirkpatrick's opinion filed July 28, 1958 (p. 24a of appendix to Brotherhood's brief):

"It will be noted that the order and the stipulation upon which it was based really consist of two parts (1) an agreement that the Court will determine by appropriate proceedings the persons entitled to share, describing them in general terms consistent with the cause of action. No artificial class is set up in the stipulation, and those who are entitled to share in the fund are those who would have been entitled to recover had the law suit run its normal course. (2) An agreement as to the amount to be paid by the Railroad in full settlement of its obligations under the award."

Two other questions remain to be considered.

The Government intervened in No. 12,721 but filed no brief and was not represented at the argument. Presumably they took no action because of the assurance that from the amount payable to each claimant, there would be withheld income taxes and social security contributions. This is inherent in a situation of this kind and follows as a matter of law.

Counsel for the complainants in the class action stipulated in the Court below that they would accept such sum as was allowed them by the Court as counsel fees and that they would not look to the several claimants from whom they had received powers of attorney authorizing a deduction of one-third of the amount recovered. We are pleased to note this and to state of record that they would not be entitled to double counsel fees in any event.

The order of the Court below will be reversed and remanded in No. 12,696, with instructions to the Court below to enter an order allowing counsel fees to the appellants therein in a sum consistent with this opinion; the appeal of The Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees in No. 12,721 will be denied on its merits; all costs in both appeals shall be payable out of the funds created by the respective parties.