# Reimensnyder, Administrator, *versus* Gans.

110 17
179 449
110 17
21 SC 216

A promise in writing to pay a certain sum towards the erection of a church, made without consideration, and where it does not appear that others were induced to subscribe, or that any work was undertaken on the faith of it, is rendered void by the death of the promisor within one calendar month after its date, being within the provisions of sec-tion 11 of the Act of April 26th, 1855 (P. L. 332).

April 27th, 1885. Before MERCUR, C. J., GORDON, PAX-SON, STERRETT, GREEN and CLARK, JJ. TRUNKEY, J., ab-sent.

ERROR to the Court of Common Pleas of *Northumberland county :* Of July Term 1884, No. 167.

Case stated, wherein Rev. H. G. Gans for St. Joseph's church of Milton, was plaintiff, and George B. Reimensnyder administrator, d. b. n. of Daniel P. Caul, deceased, was defend-ant, as follows :

Daniel P. Caul, late of said county, died intestate June 2d, 1882, and letters of administration on his estate were granted by the register to William B. Caul on the 6th of June, 1882, who took upon himself the settlement of said estate. And the said William B. Caul having died on the      day of De-cember, 1883, letters of administration d. b. n. on the said

14 OUTERBRIDGE—2

estate were granted by the said register on the 7th day of January, 1884, to George B. Reimensnyder, Esq., party defendant.

Rev. H. G. Gans is now and was on the 1st day of June, 1882, and for some time prior thereto, pastor or priest in charge of St. Joseph's Catholic church of Milton, Pa. Daniel P. Caul, the intestate, during his lifetime, and at the time of his death, was a member and communicant of St. Joseph's Catholic church of Milton, Pa. That the church edifice in which said parish worshipped was destroyed in Milton by the great fire of May 14th, 1880. That after the destruction of said church edifice, the said Rev. H. G. Gans commenced to solicit subscriptions to a fund to enable the said St. Joseph's Catholic church to rebuild the same, and upon his securing subscriptions to the amount of $1,135 the erection and construction of said church building began on or about the first day of May, 1882. That during the progress of the work additional subscriptions were obtained. Among others was that of Daniel P. Caul, who, upon the 1st day of June, 1882, placed his name to a written instrument, of which the following is a true copy:

"June 1, 1882.

We the undersigned do promise to pay to Rev. H. G. Gans the respective sums attached to our names towards the erection of St. Joseph's church. Signed

DANIEL P. CAUL, $300.00.

That said church building was completed on the 23d day of September, 1883, and consecrated to the purposes for which it was built, to wit: the worship of God according to the faith and practice of the Roman Catholic church. That said subscription or no part of it has since been paid by Daniel P. Caul, or by any one for him. That there is still a large indebtedness unpaid that was incurred in the erection of said church edifice, the cost of which greatly exceeded the entire amount of subscriptions obtained.

If the court be of the opinion that plaintiff is entitled to recover on these facts, then judgment to be entered for the plaintiff for the sum of $300, with interest from September 1st, 1883, but if not, then judgment to be entered for the defendant. The costs to follow the judgment, and either party to have the right to sue out a writ of error thereon.

The court, in an opinion by ROCKEFELLER, P. J., entered judgment for the plaintiff for $300 with interest. The defendant took this writ of error, assigning for error the said judgment.

*C. G. Voris,* for the plaintiff in error.

*McCleery & Derr,* for the defendant in error.

Mr. Justice GORDON delivered the opinion of the court, October 5th, 1885.

A day or two before the death of Daniel Caul, the plaintiff, a priest of the Roman Catholic church, obtained from the said Caul a subscription, or obligation, in words and language as follows : " June 1, 1882.   We the undersigned do promise to pay to Rev. H. G. Gans the respective sums attached to our names towards the erection of St. Joseph's church.   Signed, Daniel P. Caul, $300."   To enforce this obligation, suit has been brought against the administrator of the estate of the decedent, and the question that presents itself is, whether or not the case falls within the 11th section of the Act of 1855. The court below thought it did not, and entered judgment on the case stated, for the plaintiff.   We cannot agree with the conclusion thus reached, for if we are to treat the subscription as an unexecuted gift, it must not only fall within the prohibition of the statute, but, without the statute, would be revocable by the donor's death: Helfenstein's Estate, 27 P. F. S., 328.   It was, however, held in the court below, and so argued here, that the paper referred to is not to be regarded as a mere gift to a charity, but rather as a contract founded upon a good and sufficient consideration.   But the fault of this hypothesis is that nothing of the kind appears in the case stated, and the court was compelled to assume what is not therein found; that is, that the building was carried on and completed on the faith, *inter alia*, of this subscription.   It would seem, however, that the church building was finished without this, and it could now be applied only to the debt incurred in the erection thereof.   Again, this subscription stands alone ; by it no others were induced to subscribe, nor does it appear that any work was undertaken or done on the faith of it.   Nothing by way of consideration moved either to or from the plaintiff.   He was but a trustee to solicit, and receive money for the use of the St. Joseph's congregation; and so the case comes directly within the statute.   Now, we may admit as correct that which was said in Caul *v.* Gibson, 3 Barr, 416, that a moral obligation will support an express promise.   Of itself, however, it cannot be enforced; hence we must infer that in itself it contains no valid consideration. The fact is, that, as we may see from the case of Ryerss *v.* The Trustees of the Presbyterian Congregation of Blossburg, 9 Ca., 114, a contract of the kind here involved is enforceable rather by way of estoppel than on the ground of consideration in the original undertaking.   The case is not like one arising under the Bankrupt Acts, or Statute of Limitations, where the debt is barred by a discharge, or by time ; for in such case the previous consideration continues, as does the

[Reimensnyder, Adm'r, *v.* Gans.]

moral obligation to pay, whilst the Statutes operate only to deprive the creditor of his remedy to enforce payment. But a subscription to a charity embodies in it no previous consideration; hence, as we have said, it can be operative only by way of estoppel; and unless others have been thereby induced to subscribe, or some undertaking has been commenced, or continued, on the faith of it, it cannot be regarded as a binding contract. In the case in hand, the Rev. Mr. Gans was but a volunteer, and no consideration passed from him to Caul; the paper was signed by the decedent alone, and we know not whether any one else even so much as saw it. No work or labor was furnished on account of it, and it was, therefore, but an unexecuted gift that was revoked by Caul's death. This, however, is merely obiter, for the Act of 1855 renders invalid any and every conveyance or devise of property, real or personal, made to any charity or body politic within one calendar month of the decease of the alienor or testator, unless the same be made for a " fair valuable consideration." In the case under discussion, no consideration of a valuable character induced Caul's subscription; it was but the promise of a donation, or gift, to a charity, — a promise which the law refuses to execute, and so comes to nothing. Nor is it to the purpose to say that others might have been misled by it, — might have been induced to subscribe, or otherwise promote the intended work; for every body is presumed to know that such an obligation falls under the ban of the Act of 1855, and that nothing can be predicated of it. How, then, will the law execute, by way of estoppel, that which the law condemns, and which by a presumption, *juris et de jure*, it assumes that every one knows to be illegal? This cannot be; the Statute is a wholesome one, designed to protect the dying from the craft of priest and layman alike, when they come not to minster comfort and spiritual consolation, but to gather spoil for some favorite charity. We are, therefore, altogether indisposed to detract from its force, or to countenance any evasion of its terms.

The judgment of the Court below is now reversed, and judgment on the case stated ordered for the defendant below, with costs.