## Fried, Appellant, v. Fisher et al.

Argued December 2, 1937. Before SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

498

*Harry Norman Ball,* for appellant.

*Samuel J. Halpren,* with him *H. Joseph Harrison,* for appellee.

OPINION BY MR. JUSTICE STERN, January 3, 1938:

Under date of October 6, 1932, plaintiff leased to Robert H. Fisher (appellee) and J. Edward Brill a store in Bryn Mawr, the term being for three years and eleven months from November 1, 1932. Fisher and Brill, as partners, carried on the business of florists in the demised premises. In December, 1933, Fisher desired to withdraw and go into a business of his own in another locality, but although Brill agreed to this Fisher did not wish to enter upon the new venture unless he could be released from the obligations of the partnership. Accordingly, he sought out plaintiff and told him of his plans, saying: "I expect to do something, go into some business, if I get out of here, . . . and I naturally want to get everything taken care of, obligations, . . . because I didn't want to go into anything else and have any obligations hanging over my head." Plaintiff answered that he "was perfectly satisfied if they [Brill and his son] assumed the balance of the lease, as far as I am concerned, just forget about it." Later Fisher spoke to him again, saying, "I want

to make sure that everything regarding the lease is O. K. between you and me," and plaintiff said he was "perfectly satisfied, I am satisfied to have Mr. Brill assume the lease, and if it is going to help you any to get started in business, I release you. . . . so long as you are finished here, through here, and your responsibility is ended here, why not come up to Wayne?" Mrs. Fisher, wife of appellee, testified that her husband told plaintiff of his intention to dissolve the partnership and that he would like to know how he stood as far as the rent was concerned, because he wanted to go into another business, and plaintiff replied that "your responsibilities here are ended," and on a later occasion added: "it is definitely decided now that you are going out of the business, Mr. Brill has agreed to take over the lease, why don't you come up and start a store in Wayne?" At the trial plaintiff denied these conversations, but, in view of the jury's verdict for appellee, the latter's version must be accepted as representing the facts.

Fisher dissolved his partnership with Brill and engaged in the restaurant business in Ardmore, Brill remaining in the demised premises and thereafter conducting the old business with his son under the name of "Brill Flowers, Florists," paying the rent each month by checks signed by himself and his son instead of by himself and Fisher as theretofore. This continued for about a year and a half. On August 19, 1935, plaintiff entered judgment by confession on the lease against both Fisher and Brill for rent from July 1, 1935, to the end of the lease, September 30, 1936. On petition by appellee the judgment was opened as to him. The issue was presented to a jury, resulting in a verdict for appellee which was sustained by the court below.

Although there are assignments of error to portions of the charge, the case presented on appeal to this court is confined by the statement of the question involved to plaintiff's contention that binding instructions should

have been given in his favor. While, perhaps, some of the learned trial judge's charge as to the law governing consideration in contracts might be open to academic criticism, the point upon which the case really turns is whether Fisher can enforce plaintiff's promise to release him from further liability under the lease.

It is beyond the pale of argument that a promise by a creditor to release one of the partners of a debtor firm from liability for an obligation is, in the absence of qualifying facts, legally unenforceable for want of consideration. *Walstrom v. Hopkins,* 103 Pa. 118.[1] The necessity of consideration to support a contract, though originally imported into the law merely as a technical requirement for the action of assumpsit,[2] and subject of late to statutory inroads made upon it,[3] still remains firmly entrenched as one of the fundamental principles of the common law. See opinion by CARDOZO, C. J., in *Allegheny College v. National Chautauqua County Bank,* 246 N. Y. 369, 375. But just as the law has consistently upheld the doctrine that, under given circumstances, a person may be estopped by his conduct, his statements, or even his silence, if another has thereby been induced to act to his detriment, so from the earliest times there was recognized the principle that an estoppel might similarly arise from the making of a promise, even though without consideration, if it was intended that the promise be relied upon and in fact it was relied upon, and a refusal to enforce it would be virtually to sanction the perpetration of fraud or result in other injustice. In his "Lectures on Legal History," Professor Ames says (p. 143) : "That equity

---

[1] The court in this case, however, pointed out that it did not appear that the promisee suffered any prejudice by reason of the promise, and that *"under these circumstances"* there was merely a moral consideration.

[2] 8 Holdsworth, History of English Law, pp. 7-8.

[3] Uniform Written Obligations Acts; in Pennsylvania, Act of May 13, 1927, P. L. 985.

gave relief, before 1500, to a plaintiff who had incurred detriment on the faith of the defendant's promise, is reasonably clear, although there are but three reported cases."[4] In *Pillans v. Van Mierop,* 3 Burr. 1663, a promissory estoppel, although not so termed, was held sufficient by Lord MANSFIELD and his fellow judges in 1765: KELLOGG, J., dissenting opinion, in *Allegheny College v. National Chautauqua County Bank,* 246 N. Y. 369, 381. This principle is now formulated in section 90 of the Restatement of the Law of Contracts as follows: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by the enforcement of the promise." In recent years there has been adopted the phrase "promissory estoppel," and this nomenclature is well chosen as indicating that the basis of the doctrine is not so much one of contract, with a substitute for consideration, as an application of the general principle of estoppel to certain situations.[5] It is important to bear in mind that, as already pointed out, the doctrine is much older in its origin and applications than the terminology now employed to describe it.

Illustrative cases abound in the reports,[6] especially since the more formal embodiment of the principle in

---

[4] One in 1378, one in 1438, and one in 1468.

[5] However, promissory estoppel has been characterized by eminent authority as a "species of consideration": LEARNED HAND, J., in *Porter v. Commissioner of Internal Revenue,* 60 Fed. (2) 673, 675; or as "a substitute for consideration or an exception to its ordinary requirements": CARDOZO, C. J., *in Allegheny College v. National Chautauqua County Bank,* 246 N. Y. 369, 373; see also Williston on Contracts, rev. ed., vol. 1, p. 494, § 139.

[6] For example, *Faxton v. Faxon,* 28 Mich. 159; *Ricketts v. Scothorn,* 57 Neb. 51, 77 N. W. 365; *Stevens v. Turlington,* 186 N. C. 191, 119 S. E. 210. See also *Reimensnyder v. Gans,* 110 Pa. 17, 19, 20.

section 90 of the Restatement.[7] Its most frequent application has been to cases in which a person announces his intention of abandoning an existing right, and thereby leads another, relying thereon, to some action or forbearance. Such cases have sometimes been referred to as well-recognized exceptions to the general proposition that, in order to give rise to an estoppel, a representation must relate to an existing fact and not be merely an expression of opinion or a promise of future performance.[8] "There is no rule more necessary to enforce good faith than that which compels a person to abstain from enforcing claims which he has induced others to suppose he would not rely on. The rule does not rest upon the assumption that he has obtained any personal gain or advantage, but on the fact that he has induced others to act in such a manner that they will be seriously prejudiced if he is allowed to fail in carrying out what he has encouraged them to expect": *Faxton v. Faxon*, 28 Mich. 159, 161.

In Pennsylvania the doctrine has been applied under various forms. Thus in *Harris v. Brown*, 202 Pa. 16, and in *Park Steel Co. v. Allegheny Valley Railway Co.*, 213 Pa. 322, a license which ordinarily would be revocable at the will of the licensee was held to become irrevocable if it was intended to induce and did induce the expenditure of money by the licensee. In *Cameron v. Townsend*, 286 Pa. 393, it was held that where one,

---

[7] *W. B. Saunders Co. v. Galbraith*, 40 Ohio App. 155, 178 N. E. 34; *Vogel v. Shaw*, 42 Wyo. 333, 294 Pac. 687; *Fluckey v. Anderson*, 132 Neb. 664, 273 N. W. 41; *Simmons v. Randforce Amusement Corp.*, 293 N. Y. Supp. 745.

[8] *Insurance Co. v. Mowry*, 96 U. S. 544, 547; *Dickerson v. Colgrove*, 100 U. S. 578; *Banning v. Kreiter*, 153 Cal. 33, 94 Pac. 246; *Johnson v. Blair*, 132 Ala. 128, 31 So. 92; *Kingston v. Walters*, 16 N. Mex. 59, 113 Pac. 594; *Witherell v. Kelly*, 187 N. Y. Supp. 43; *Stayton v. Graham*, 139 Pa. 1, 12. See also cases collected in Williston on Contracts, rev. ed., vol. 1, pp. 496-497, and in 21 C. J. 1142, § 145

prior to a judicial sale, promised another that he would purchase the property for the other's benefit, and the other was led thereby to refrain from any attempt to protect his own interest, and otherwise acted on the faith of the promise, the promisor was estopped from repudiating the obligation to hold the property in trust for the promisee. In *Langer v. Superior Steel Corporation*, 105 Pa. Super. Ct. 579,[9] where the superintendent of the defendant corporation's plant retired from active duty, and the president of the corporation promised him an annual pension for life if he remained loyal to the company and did not become employed in any competitive occupation, and after four years the company stopped paying the pension, it was held that the plaintiff, having been induced by the promise not to seek other employment, was entitled to enforce the promise.[10]

The facts in the present case constitute a situation to which the doctrine of promissory estoppel peculiarly applies, because they involve the announcement by plaintiff of the intended abandonment of his right to enforce Fisher's liability for the rent, knowing that such announcement would be relied upon by him to the extent of his embarking upon a new business venture. All the safeguarding features thrown around the doctrine of promissory estoppel to prevent its too loose application—that the promise be one likely to induce action, that such action be of a definite and substantial character, that the circumstances be such that injustice can be avoided only by the enforcement of the promise—

---

[9] In the same case, in 318 Pa. 490, a judgment for plaintiff in the court below was reversed solely on the ground that the president of the corporation had no authority to bind it by the promise of a pension for life.

[10] The opinion in *Trexler's Estate*, 27 D. & C. 4, contains an interesting and comprehensive discussion of the subject of promissory estoppel.

are here present. Plaintiff contends that it was not shown that Fisher suffered a loss in the restaurant business, but he did substantially change his position by entering into that business upon the faith of plaintiff's promise, and when, at the trial of the case, Fisher was questioned by his counsel on this point for the purpose of proving the consequences of his reliance upon plaintiff's promise, counsel for plaintiff objected, and his objections were—in our opinion improperly—sustained by the court. Having succeeded in ruling out this testimony, plaintiff cannot now contend that proof of the facts thus barred was vital to Fisher's defense. Plaintiff also argues that the release was conditional upon Brill's "assuming" the lease, and that there was no evidence of such assumption. It was testified, however, that plaintiff stated to Fisher that Brill had agreed to take over the lease. Moreover, the fact that after Fisher's withdrawal from the partnership the business was conducted by Brill and his son and subsequent checks for the rent were signed by them amply warrants the inference, established by the verdict, that Brill did assume such liability.

Judgment affirmed.