Opinion by
 

 Spaulding, J.,
 

 Appellant, Travelers Insurance Company, appeals from the dismissal of its action in assumpsit to recover the sum of $2039.23 plus interest and costs. Suit was brought in the Court of Common Pleas of Philadelphia against appellee Hartford Accident and Indemnity Company. The background of this action follows.
 

 On October 2, 1958, Herman C. Lehman, an employee of Welding Engineers, Inc., was injured while allegedly acting within the course and scope of his employment. Subsequently, appellant, indemnity carrier for Welding Engineers, Inc., paid $2039.23 in compensation benefits and medical expenses on Lehman’s behalf pursuant to the Pennsylvania Workmen’s Compensation Act. The injured employee, Lehman, brought a third-party suit for personal injury in the State of
 
 *548
 
 Michigan against alleged tort-feasors Mitts and Merrill Company, a Michigan corporation and appellee’s assured, and Standard Pressed Steel Co. of Jenkintown, Pennsylvania. The case proceeded to trial resulting in a hung jury. On November 9, 1965, before the case was retried, Lehman and both defendants entered into a “Consent Judgment” for $9000.00 exclusive of interest and costs. On the same date, Lehman executed a “Satisfaction of Judgment”.
 

 On or about April 28, 1961, appellant had advised appellee of its claim to be subrogated to Lehman’s interest in the Michigan suit in accordance with the Pennsylvania Workmen’s Compensation Act
 
 [1]
 
 to the ex
 
 *549
 
 tent of the compensation benefits and medical expenses furnished to Lehman. Representatives of appellant and appellee continued to exchange correspondence concerning this case for the next several years. The record indicates that appellant even made its office file on the matter available to appellee. However, during this time, appellant failed to contact Lehman or his attorney. Appellant also failed to intervene in the Michigan action against Mitts and Merrill Company, Inc. et al., in order to protect its subrogation rights.
 

 After the “Consent Judgment” was entered into, appellant made demand on appellee for |2039.23, the amount paid to Lehman. The demand was rejected. Appellant filed its action in assumpsit against appellee. On appeal from an arbitration panel’s finding for appellee, the court below, sitting without a jury, dismissed the suit on the grounds that the “Consent Judgment” in Michigan barred any recovery by appellant in the present action. We affirm this holding, although on somewhat different grounds than those expressed in the trial court’s opinion.
 

 The court below is correct in citing our adherence to the time-honored principle that an injured party must consolidate into a single action against a wrongdoer all damages arising out of a tort.
 
 Fields v. Philadelphia Rapid Transit Co.,
 
 273 Pa. 282, 117 Atl. 59 (1922);
 
 Moltz, to Use v. Sherwood Bros., Inc.,
 
 116 Pa. Superior Ct. 231, 176 Atl. 842 (1935). As a subrogee derives his right to recovery from the injured party, the prohibition against splitting of actions is no less binding where the interest of a subrogee is involved.
 
 Moltz, to Use v. Sherwood Bros., Inc.,
 
 supra;
 
 Spinelli
 
 
 *550
 

 v. Maxwell,
 
 430 Pa. 478, 243 A. 2d 425 (1968). The trial court is also correct in concluding that, despite language to the contrary in an early case,
 
 [2]
 
 more recent precedents indicate that the right of subrogation is not self-executing once payment has been made to, or on behalf of, the legal plaintiff and notice has been given to the defendant; but that the subrogee must exercise “reasonable diligence”
 
 [3]
 
 to protect its interest.
 
 Saber v. Supplee-Wills-Jones Milk Co.,
 
 181 Pa. Superior Ct. 167, 124 A. 2d 620 (1956);
 
 Moltz, to Use v. Sherwood Bros., Inc.,
 
 supra.
 

 If the only communication between the parties to this action had been appellant’s notice to appellee of its subrogation claim, we would be compelled to conclude on the basis of the aforementioned precedents that, as appellant failed to prove an enforceable contract with appellee for the protection of its subrogation rights, it is foreclosed from bringing a second action against appellee based on the same tort which precipitated the Michigan judgment. However, in light of evidence of more extensive communications between the parties, we believe that an appropriate inquiry for the court below would have been whether appellee made such representations, rising to the nature of a promise, as could have been reasonably foreseen could induce appellant to forebear from taking affirmative steps to
 
 *551
 
 protect its interests, and whether appellant’s failure to act was based on reasonable reliance on those representations. The trial court never addressed itself to this issue, i.e., whether appellee is promissorily es-topped from denying appellant’s subrogation claim.
 

 Even before the nomenclature “promissory estoppel” was coined, and before the doctrine was adopted in §90 of the Restatement of Contracts, Pennsylvania jurisprudence had accepted the notion that where a party acts or fails to act to his detriment in reasonable reliance upon the promise of another, the promisor may be estopped from repudiating his promise, even in the absence of legal consideration. See
 
 Fried v. Fisher,
 
 328 Pa. 497,196 Atl. 39 (1938); also
 
 Cameron v. Townsend,
 
 286 Pa. 393, 133 Atl. 632 (1926).
 

 If the facts are as alleged by appellant, that it fore-bore in asserting its subrogation rights in reliance upon appellee’s promise to recognize and protect those rights, the promissory estoppel doctrine is applicable. If the facts are as appellant alleges, neither the Pennsylvania statute of limitations for tort actions nor the Michigan judgment is a bar to appellant’s cause of action, as this cause of action derives from appellee’s breach of promise, not from the injured employee’s negligence claim. Moreover, application of the promissory estoppel concept may be particularly appropriate in this type of case. We have long recognized that subrogation is a doctrine governed by equity — the basis of the doctrine “is the doing of complete, essential and perfect justice between all parties without regard to form.”,
 
 Wilson v. Pittsburgh B. & I. Works,
 
 85 Pa. Superior Ct. 537 (1925);
 
 Long v. Marino Masse, Inc.,
 
 205 Pa. Superior Ct. 344, 208 A. 2d 920 (1965). A thorough inquiry into this question would have required the court to consider not only the actions of these two parties, but also the custom within the insurance industry.
 

 
 *552
 
 Notwithstanding our belief that appellant is not foreclosed from seeking recovery, we must still affirm the judgment of the court below because appellant produced absolutely no evidence to establish appellee’s negligence as the cause of Lehman’s injury. Appellant was aware of this court’s holding in
 
 Broderick v. Great Lakes Casualty Co.,
 
 152 Pa. Superior Ct. 449, 33 A. 2d 653 (1943), that a subrogee suing in either tort or assumpsit must prove the negligence of the third-party tort-feasor. However, appellant evidently assumed that the Michigan judgment
 
 [4]
 
 sufficiently established appellee’s negligence. This reliance was misplaced.
 

 Both Michigan law and federal constitutional principles militate against a finding that the Michigan consent judgment is conclusive of appellee’s negligence. Although, under Michigan law, a consent judgment is adjudicative in its effect, it is essentially contractual in character. “A consent judgment differs substantially from the usual litigated judgment. It is primarily the act of the parties rather than the considered judgment of the court.”
 
 Oritz v. Travelers Insurance Co.,
 
 2 Mich. App. 548, 555, 140 N.W. 2d 791, 794 (1966). “A Consent judgment is not the judgment of the court, but essentially the judgment of the parties. The parties must con
 
 *553
 
 sent for the judgment to become effective.”
 
 Hibbard v. Hibbard, 27
 
 Mich. App.
 
 122,
 
 183 N.W. 2d 358 (1971). We can no more impute a meaning to a consent judgment which is not conveyed by the words of the document nor intended by the parties to the agreement than we can to an ordinary contract. As the U.S. Supreme Court stated in
 
 United States v. Armour & Co.,
 
 402 U.S. 673, 91 S. Ct. 1752 (1971), “Because the defendant has, by the decree, waived his right to litigate the issues raised, a light guaranteed to him by the Due Process Clause, the conditions upon which he has given the waiver must be respected, and the instrument must be construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation.” (at 682)
 

 As there is nothing in the language of the consent judgment which expressly or impliedly confesses appellee’s negligence, the burden was upon appellant to establish negligence by a preponderance of the evidence.
 
 Broderick,
 
 supra. Appellant failed to sustain this burden.
 

 The judgment of the court below is affirmed.
 

 [1]
 

 The pertinent section of the Act reads as follows:
 
 “§671. Subrogation of employer to rights of employee against third persons; subrogation of employer or insurer to amount paid prior to award.
 

 “Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article* by the employer; reasonable attorney’s fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe, his personal representative, his estate or his dependents. The employer shall pay that proportion of the attorney’s fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal representative, his estate or his dependents, and shall be treated as an advance payment by the employer on account of any future instalments of compensation.
 

 “Where an employe has received payments for the disability or medical expense resulting from an injury by accident in the course of his employment, paid by the employer, or an insurance company on the basis that the injury and disability were
 
 not
 
 compensable under this act, in the event of an agreement or award for that injury, the employer or insurance company, who made the payments shall be subrogated out of the agreement or award to the amount
 
 *549
 
 so paid, if the right to subrogation is agreed to by the parties or is established at the time of hearing before the referee or the board. As amended 1956, Feb. 28, P.
 
 L.
 
 (1955) 1120, §1; 1959, Dee. 28, P. D. 2034, §4; 1961, Sept. 30, P. L. §2.”
 

 [2]
 

 Smith v. Yellow Cab Co.,
 
 288 Pa. 83, 135 Atl. 858 (1927).
 

 [3]
 

 The eases leave us in somewhat of a quandary as to what constitutes “reasonable diligence”. As indicated in the text of this opinion, the authorities state that mere notice to the third party tort-feasor is insufficient to protect the employer’s subrogation rights.
 
 Smith v. Yellow Cab Co.,
 
 supra, states that the employer is not bound to intervene in the action against the wrongdoer in order to protect his claim. Where between these two extremes “reasonable diligence” lies has not been decided as a matter of law. Of. Vol. 2 Skinner, Pennsylvania Workmen’s Compensation Law, p. 920 (4th ed. 1947).
 

 [4]
 

 The Michigan judgment reads as follows:
 

 “The defendants in the above entitled matter having appeared in open court and having consented that the plaintiff take judgment, including any interest and without costs, in the total amount of Nine Thousand ($9,000.00) Dollars against them jointly, and
 

 The plaintiff, being in court both personally and with his attorney, and having been questioned by the Court and having agreed to take judgment against said defendants in such amount, and
 

 The Court, being fully acquainted in the premises and feeling that said sum of Nine Thousand ($9,000.00) Dollars was fair and equitable under the circumstances then present,
 

 It Is Obdebed, that said plaintiff take judgment against said defendants without interest and without costs, in the amount of Nine Thousand ($9,000.00) Dollars.”