384 A.2d 1228

**Thomas A. CARDAMONE, Appellee,**

**v.**

**UNIVERSITY OF PITTSBURGH and the Insurance Company of North America, Appellants.**

Superior Court of Pennsylvania.

Argued Nov. 16, 1977.

Decided April 13, 1978.

66

68

Wilbur McCoy Otto, Pittsburgh, with him Stewart M. Flam, Pittsburgh, for appellants.

Louis M. Tarasi, Jr., Pittsburgh, with him John Alan Conte, Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, President Judge:

This is an appeal from the chancellor's decree of November 6, 1976 granting a mandatory injunction requiring appellant, the University of Pittsburgh, to contribute $2,000 per

month towards appellee's medical expenses.[1] Appellant contends first, that the lower court erred in finding that appellant had a contractual duty to pay appellee's medical bills and second, that no legal basis existed for the issuance of the mandatory injunction. We agree and therefore vacate the decree of the chancellor.

Appellee, Thomas Cardamone, was gravely injured on October 19, 1972, when he fell from gymnastic equipment which he was using as a member of the University's gymnastics team. Appellee was permanently paralyzed from the neck down and will continue to require extensive medical care throughout his lifetime. In response to the enormity of the financial burden resulting from the accident, appellant and appellee signed, on April 12, 1973, a "Letter Memorandum of Expression of Intention and Acknowledgement of Understanding," in which appellant stated its intention to pay all medical bills incurred as a direct result of the accident "for all time or such period of time as the University may determine feasible." Record at 32a. Paragraph 2 of the memorandum enunciated various limitations on, and clarifications of, this intention.[2]

1. The provisions of the decree specifically require appellant to pay no more than $2,000 per month of those of appellee's medical expenses that are not subject to state or federal monetary grants or programs. These payments are to continue until a verdict is reached in a trespass and assumpsit suit instituted by appellee against appellant at No. 3605 October Term, 1974. The suit was initiated by the filing of a praecipe for a writ of summons on September 17, 1974, and a complaint was filed in August, 1976.

2. By the expression, making or taking of any or all such intentions, proposals and/or actions as expressed herein, or any other similar such action, pursuant hereto, the University does not:

(A) in any manner, nature or degree legally obligate or commit itself to any of the intentions, proposals or actions set forth herein whether expressed or implied, neither for all time or any time;

(B) in any manner or degree, consider either itself, or any of its employees, servants, agents, representatives or personnel, in any way, legally responsible for either the occurrence of the Accident or the payment or reimbursement of the "Expenses";

(C) propose, intend or wish to deprive, prevent, hinder, delay, modify, change or affect in any manner, nature or degree whatsoever, any legal rights, legal action or course thereof, which the Student and/or Parents may have against the University or any

The University of Pittsburgh paid all of appellee's medical expenses until the fall of 1975, when it announced its intention to cease the payments.[3] In June, 1976, appellee filed a complaint in equity and an application for a mandatory preliminary injunction, seeking to compel appellant to continue to defray appellee's medical costs. Following hearings in July and September, 1976, the chancellor handed down a decree nisi granting appellee's application. Appellant's exceptions to the decree were denied and on November 6, 1976 the decree was made final.

The grant of a mandatory injunction is a harsh remedy. *Credit Alliance Corp. v. Philadelphia Minit-Man Car Wash Corp.*, 450 Pa. 367, 301 A.2d 816 (1973). It may only be employed when the plaintiff is clearly entitled to immediate relief and irreparable injury would otherwise result. *Roberts v. School District of Scranton*, 462 Pa. 464, 469, 341 A.2d 475, 478 (1975), *citing, Zebra v. Pittsburgh School District*, 449 Pa. 432, 296 A.2d 748 (1972). In determining whether the chancellor erred in issuing a mandatory injunction in favor of appellee, the scope of our review is restricted. It is axiomatic that the factual conclusions of the chancellor have the force of a jury verdict and will not be disturbed on appeal unless they are not supported by adequate evidence. *Chatham Communications, Inc. v. General Press Corp.*, 463 Pa. 292, 297, 344 A.2d 837, 840 (1975). "Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably

third party, and the acceptance by the Students and/or Parents of any payment or reimbursement of Expenses made by the University hereunder shall not serve to cause any waiver or release, by the Student and/or Parents, in any manner or degree, of any such legal rights, legal action or course thereof;

(D) waive or release any legal rights or defenses which it may have pursuant to any legal action, of any kind or nature, which may subsequently be brought by or on behalf of the Student and/or Parents, or a third party, and against or involving the University, arising out of the Accident.

Record at 33a.

3. Appellant did, nevertheless, pay several more bills in February, 1976. Appellee's Brief at 4. The total amount paid to date is approximately $100,000.

erroneous or misapplied will we interfere·with the decision of the chancellor." *Roberts v. School District of Scranton*, 462 Pa. 464, 469, 341 A.2d 475, 478 (1975). In the instant case we are constrained to vacate the chancellor's decree because we conclude that the law of contracts was misapplied in several important respects.

Despite an extended discussion of the doctrine of promissory estoppel,[4] it is clear that the chancellor considered the memorandum signed by the parties on April 12, 1973 to be a valid contract supported by adequate consideration on both sides.[5] With this we cannot agree. Consideration is an essential ingredient of a contract[6] and a promise unsupported by consideration is unenforceable in the absence of justifiable detrimental reliance by the promisee. *Stelmack v. Glen Alden Coal Co.*, 339 Pa. 410, 14 A.2d 127 (1940). We must, therefore, determine whether, as the chancellor held, the memorandum constituted a binding contract.

Appellee contends that appellant's promise[7] to pay his medical expenses was given in exchange for past

4. The doctrine of promissory estoppel is, of course, only employed to enforce a promise *unsupported by consideration*, in order to avoid a manifest injustice. *Utility Appliance Corp. v. Kuhns*, 393 Pa. 414, 417 n.4, 143 A.2d 35, 37 n.4 (1958); *see* Restatement of Contracts § 90.

5. In the adjudication issued on October 13, 1976, the chancellor stated: "The instant decree is based on the contractual relationship of the parties and not on the other legal theories advanced by the plaintiff." Record at 696a.

6. Valid "consideration" confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance or return promise bargained for and given in exchange for the original promise. *Hillcrest Foundation v. McFeaters*, 332 Pa. 497, 2 A.2d 775 (1938).

7. We note, but do not address, the issue of whether appellant's promise was illusory. In a non-commercial context, a "contract" whose duration is to be determined solely at the volition of the promisor is normally deemed a nullity. *See* 4 *Williston on Contracts* § 1027A, at 2853 (Rev.ed. 1936). The chancellor, having found adequate consideration to support the contract, held that the use of the phrase "for all time or such period of time as the University may

services rendered to the University or as consideration for appellee's forbearance in instituting a suit for damages. Neither of these constitutes consideration sufficient to create a binding contract. Services rendered by appellee, as a student athlete, prior to the execution of the agreement, furnish no basis for holding that there was a binding legal agreement since past consideration is insufficient. *Erny v. Sauer*, 234 Pa. 330, 83 A. 205 (1912); *Wimer v. Overseers of Poor of Worth Township*, 104 Pa. 317 (1883). These services were neither rendered nor bargained for in exchange for appellant's promise to pay appellee's medical bills. While forbearance from proceeding with a lawsuit may constitute good consideration for an agreement, *Travelers Insurance Co. v. Hartford Accident and Indemnity Co.*, 222 Pa.Super. 546, 294 A.2d 913 (1972), it must be bargained for and given in exchange for the promise made by the promisor. *Schroyer v. Thompson*, 262 Pa. 282, 105 A. 274 (1918). In the instant case it is clear that appellant neither intended nor wished to deter appellee from instituting any possible action for damages. Paragraphs 2.(C) and (D) of the memorandum specifically and unambiguously provide that the agreement is in no way intended to influence or prevent any legal remedy otherwise available to appellant.[8]

In the absence of consideration, appellee contends that appellant's promise is enforceable under the doctrine of promissory estoppel. It is true that a promise

determine feasible" created an ambiguity as to its intended duration. She resolved this "ambiguity" by employing an objective definition of the term "feasible." *See* Record at 687a–689a, 692a and 697a. This result ignores the purely subjective connotations of this limiting language and improperly initiates an inquiry into the intention of the parties where unambiguous language controls.

8. *See* note 2, *supra*. Appellee also asserts that the clause in the agreement providing that the memorandum may not be introduced into evidence in any subsequent litigation and the clause allowing deduction of payments made by appellant from any future settlement or judgment impose upon appellee a detriment and, therefore, provide adequate consideration. These clauses merely set forth conditions and limitations upon the gratuitous promise by appellant to assume appellee's medical expenses and can in no way be considered bargained for detriments given in exchange for appellant's aid.

unsupported by consideration may nevertheless be enforced in order to remedy a manifest injustice. *Fried v. Fisher*, 328 Pa. 497, 500, 196 A. 39, 41 (1938).[9] In order for the doctrine to apply, however, the following criteria must be met: (1) the promisor must make a promise that he should reasonably expect to induce a definite action or forbearance on the part of the promisee; (2) the promise must actually induce such action or forbearance; and (3) injustice can be avoided only by enforcement of the promise. Restatement of Contracts, Section 90. *See Fried v. Fisher*, 328 Pa. 497, 501, 196 A. 39, 42 (1938). The first of these criteria is obviously not satisfied in this case. Nothing was present in the agreement which appellant should reasonably have expected to induce appellee to forbear from bringing a suit for damages against it or any third party or from seeking alternative aid. To the contrary, the language of the memorandum discourages such reliance and, indeed, warns against it.[10]

While the language of the agreement furnishes no basis for invoking the doctrine, appellee asserts that certain statements made by appellant's counsel following the execution of the document induced him to delay instituting his suit in trespass and assumpsit.[11] Specifically, appellee points to counsel's statement that any in-depth discovery would impede possible settlement negotiations. This statement contained no promise upon which appellee could justifiably rely in failing to proceed to trial. Any forbearance at this point

**9.** Promissory estoppel has been characterized as a substitute for consideration, an exception to the ordinary contract requirements, or even as a "species of consideration." *See Fried v. Fisher*, 328 Pa. 497, 501 n.5, 196 A. 39, 42 n.5 (1938). It is probable, however, that its basis is not contractual, but rather that it represents a specific application of the general principle of estoppel. *Id.* 328 Pa. at 501, 196 A. at 42. Pennsylvania jurisprudence had certainly incorporated it before § 90 of the Restatement of Contracts was adopted. *Travelers Insurance Co. v. Hartford Accident and Indemnity Co.*, 222 Pa.Super. 546, 294 A.2d 913 (1972).

**10.** *See* note 2, *supra.*

**11.** It will be recalled that, although a praecipe for writ of summons was filed in 1974, the complaint was not filed until two months after the equity complaint presently at issue.

was due to a desire to expedite settlement and was a strategic decision made by appellee.

■ Appellee finally invokes Sections 323 and 324 of the Restatement (Second) of Torts as a legal basis for the granting of the injunction.[12] Neither of these sections provides a remedy for appellee. It would be ironic if we were to hold, as appellee urges, that appellant's discontinuation of aid left appellee in a worse position than when payments were first begun or that appellant negligently performed its gratuitous aid. Appellant has in fact enabled appellee to obtain life-sustaining medical aid for more than three years and has permitted a gradual, albeit incomplete, process of adjustment to the trauma of becoming a quadraplegic.

■ It is evident that appellee requires constant medical attention and that he will suffer great harm if no means of continuing this treatment can be found. Before a mandatory injunction can be issued requiring appellant to finance this treatment, however, it must be established that appellant had a duty to do so and that the potential harm to appellee will be caused by appellant's failure to perform that duty. The theories advanced by appellee fail to establish a

12. Sections 323 and 324 make the following provisions:
"§ 323. Negligent Performance of Undertaking to Render Services
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his undertaking, if
    (a) his failure to exercise such care increases the risk of such harm, or
    (b) the harm is suffered because of the other's reliance upon the undertaking."
"§ 324. Duty of One Who Takes Charge of Another Who is Helpless
One, who being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by
    (a) the failure of the actor to exercise reasonable care to secure the safety to the other while within the actor's charge, or
    (b) the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him."
The chancellor did not address these theories because she had held that appellee had a clear contractual right under the 1973 agreement.

clear legal right to financial support by appellant. We of course express no opinion concerning the proper outcome of the pending suit at law for monetary damages.

The decree of the chancellor is, therefore, vacated.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.