**CARLSON, David, Appellant,**

v.

**ARNOT–OGDEN MEMORIAL HOSPITAL.**

No. 90–1261.

United States Court of Appeals, Third Circuit.

Argued Aug. 22, 1990.

Decided Nov. 5, 1990.

James D. Golkow (argued), Arthur A. Wolk, Catherine B. Slavin, Wolk, Genter & Harrington, Philadelphia, Pa., for appellant.

Peter J. Mooney (argued), White & Williams, Philadelphia, Pa., for appellee.

Before STAPLETON, COWEN and WEIS, Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

This diversity action arises from an employment dispute between Arnot–Ogden Memorial Hospital (the "hospital") and David Carlson, D.O. ("Dr. Carlson"). The hospital contracted to hire Dr. Carlson, but cancelled the contract when it discovered that he did not qualify in his specialty for staff privileges at their hospital. Dr. Carlson initiated this action, seeking relief under five causes of action, including breach of contract. The district court granted summary judgment in favor of the hospital on all five claims. With respect to the contract claim, the district court found that Dr. Carlson had not presented evidence sufficient to rebut the presumption of employment at-will. Because we find that the notice provision in the contract removes it from employment at-will and creates a contract for at least the length of the notice period, we will reverse the judgment of the district court on the contract claim, but affirm the district court with respect to all other claims.

## I.

In 1987 the hospital, located in Elmira, New York, sought two primary care physicians, and retained a medical recruitment firm to assist its recruitment efforts. That firm contacted Dr. Carlson, a second-year resident osteopath at Suburban General Hospital in Norristown, Pennsylvania. Dr. Carlson traveled to New York and interviewed for a family practice position with several representatives of the hospital, including Vincent Derisio, M.D. and Robert Nowlan.

During the interview process, Nowlan gave Dr. Carlson a blank form employment contract as an explanation of some of the hospital's employment policies. Paragraph ten of that contract has particular significance to this case. It provides that "[t]his agreement shall ... continue until terminated by either party by ninety (90) days written notice to the other." App. at 503.

During his interview, Dr. Carlson informed Dr. Derisio that he had only two years of residency experience, and Dr. Derisio told him that he was qualified for staff privileges at the hospital. Dr. Derisio was wrong. As the parties later realized, a family practice physician must have three years of residency experience in order to qualify for staff privileges at the hospital.

On April 14, 1988, Nowlan telephoned Dr. Carlson and offered him the family practice position. Dr. Carlson accepted the offer by phone on April 18, 1988. Dr. Carlson traveled to New York and again met with Nowlan. At this time Nowlan gave Dr. Carlson a written employment contract identical to the form contract he had been given earlier, except that Dr. Carlson's name and proposed annual salary had been inserted. The parties agreed that Dr. Carlson was to begin work for the hospital on or about July 11, 1988. Dr. Carlson signed the employment contract and returned it to the hospital in early

May. No representative of the hospital ever signed this written contract.

Dr. Carlson began his preparations to move to New York in early May.[1] Around that time, Dr. Derisio realized that Dr. Carlson was not eligible for staff privileges at the hospital because he had only two years of residency experience. On May 11, Dr. Derisio called Dr. Carlson and informed him of the problem, effectively cancelling the employment relationship. The hospital tried to make arrangements with Dr. Carlson that would minimize his costs and inconvenience, but the parties were unable to reach an agreement. Dr. Carlson thereafter initiated this suit seeking relief under five causes of action: breach of contract, estoppel, fraud, negligence, and willful and wanton misconduct.

## II.

The district court had jurisdiction pursuant to 28 U.S.C. § 1332(a). In determining which state's law to apply, the district court applied the choice of law rules of Pennsylvania in accordance with *Klaxon Co. v. Stentor Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941) (district court must apply choice of law rules of state in which it sits in diversity action). After evaluating the relative interests of New York and Pennsylvania in the outcome of this case, as required by Pennsylvania's choice of law rules,[2] the court determined that this case should be decided under Pennsylvania law.

■ The district court granted the hospital's motion for summary judgment, dismissing all five counts of Dr. Carlson's complaint. We have jurisdiction to review that order pursuant to 28 U.S.C. § 1291. Our review of a grant of summary judg-

ment is plenary. *Williams v. Borough of West Chester*, 891 F.2d 458 (3d Cir.1989).

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In order to defeat a motion for summary judgment, "the nonmoving party must adduce more than a mere scintilla of evidence in its favor." *Williams*, 891 F.2d at 460.

## III.

Dr. Carlson bases his breach of contract claim on the oral contract arising from Nowlan's offer of April 14, 1988, and his acceptance of April 18, 1988. The district court dismissed Dr. Carlson's contract claim because employment relationships in Pennsylvania are presumed to be at-will. The district court found that Dr. Carlson introduced no evidence that, if believed by the jury, would rebut the at-will presumption. We disagree with this conclusion. The district court did not consider the clause in the form contract that prohibits either party from terminating the employment relationship without giving the other ninety days notice. We read this provision to rebut the presumption of employment at-will and create an employment contract with a duration of at least ninety days beginning from the date Dr. Carlson was to start working for the hospital.

1. Specifically, he resigned from his position at Suburban General Hospital in Pennsylvania, traveled to New York again, signed a purchase agreement for a home in New York, and applied to be licensed as a physician in the State of New York. When it became apparent that he was not going to be employed by Arnot–Ogden Hospital, Dr. Carlson was able to renew his contract with Suburban General Hospital and continue his residency. Dr. Carlson was also released

from the home purchase agreement and was refunded his down payment.

2. *See Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964) (court should choose applicable state law on the basis of which state has the greatest interest in outcome of litigation); *Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854 (1970) (states' relative interests in litigation should be considered qualitatively, not quantitatively).

There is no dispute that the parties formed an oral contract to enter an employment relationship.[3] The terms of that employment relationship were to be governed by the form contract that Dr. Carlson was given in April and signed in early May.[4] Although no representative of the hospital ever signed this form, the hospital is bound by its terms as they define their oral contract. Contract construction, *i.e.* determining the legal effect of the terms of the contract, is a question of law for the court. *Ram Constr. Co., Inc. v. American States Ins. Co.*, 749 F.2d 1049 (3d Cir.1984). The legal question on appeal is whether the clear terms of the contract between Dr. Carlson and the hospital rebut the presumption of employment at-will.

■ Pennsylvania courts have recognized the doctrine of employment at-will for almost a hundred years. *See Darlington v. General Elec.*, 350 Pa.Super. 183, 188–89, 504 A.2d 306, 309 (1986) (tracing recognition of employment at-will doctrine in Pennsylvania to *Henry v. Pittsburgh & Lake Erie R.R. Co.*, 139 Pa. 289, 21 A. 157 (1891)); *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654 (3d Cir.1990). Under employment at-will, "employees may be

discharged *at any time*, for any reason, or for no reason at all." *Id.* (emphasis added). In Pennsylvania, the at-will presumption can be overcome by a contract, either express or implied, that specifies the duration of employment. *Veno v. Meredith*, 357 Pa.Super. 85, 96, 515 A.2d 571, 577 (1986).

■ Here the contract provides that neither party can terminate the employment relationship without giving the other party ninety days notice. We read this provision to specify the duration of the contract as, at a minimum, ninety days. Read in this way, the notice provision removes the contract from the realm of employment at-will. This provision explicitly provides that the hospital cannot terminate Dr. Carlson's employment at any time. Such a notice provision is antithetical to the very definition of employment at-will. *Darlington*, 350 Pa. Super. at 188, 504 A.2d at 309; S. Williston, *A Treatise on the Law of Contracts* § 1017 (3d ed. 1967) (Where an employment contract is at-will, there is no requirement of notice.). We hold that the ninety day notice provision in this contract removes it from employment at-will and specifies a minimum employment term of ninety days.[5]

---

**3.** Some of the hospital's representatives initially claimed that it was the hospital's position that no binding contract could have been formed until they signed the form contract. For purposes of this litigation, however, the hospital concedes that it extended an offer to Dr. Carlson and he accepted it. Brief for Appellants at 5, n. 3.

**4.** The hospital initially denied that this form contains the terms of the employment relationship. Before this Court, however, the hospital has conceded that the tender of the employment contract could be viewed as an offer of employment. Brief for Appellee at 3, n. 5. If this form constitutes the actual offer that Dr. Carlson accepted in order to create a contract, its terms are an integral part of that contract.

Even if this form is viewed merely as an extraneous document that the hospital gave to Dr. Carlson before he accepted the oral offer, its terms must be read into the actual contract between the parties. The fact that the hospital instructed Dr. Carlson to sign this form and return it to them gave him reasonable grounds to expect that it would govern their employment relationship. *Cf. Martin v. Capital Media, Inc.*, 354 Pa.Super. 199, 221–22, 511 A.2d 830, 841–42

(1986) (Employee may presume that employee handbook was contractually binding where the handbook or oral representations about the handbook indicate that it was to have such effect.). Furthermore, the fact that the hospital gave Dr. Carlson a copy of this form *before* he accepted the offer and it clarified what Dr. Carlson was being offered indicates that it was part of the bargaining process between the parties. *Compare Richardson v. Charles Cole Memorial Hosp.*, 320 Pa.Super. 106, 466 A.2d 1084 (1986). (In refusing to recognize a contract action against an employer for breaching an employee manual, the court noted that the parties had not bargained for the terms of the manual and that the employer had unilaterally changed the manual during the course of the plaintiff's employment).

**5.** In so holding, we differ in theory with *Cote v. Burroughs Wellcome, Co.*, 558 F.Supp. 883, 888 (E.D.Pa.1982) (employment under contract providing for immediate termination with either thirty days notice or payment of one month's salary was at-will and the employer did not breach contract when it fired employee and paid her one month's salary in lieu of thirty days' notice). However, the distinction between our holding and *Cote* is merely a matter of

Dr. Carlson is entitled to the damages for breach of a ninety day contract. Although the hospital did not technically breach a ninety day contract, it did breach an oral contract to enter into an employment contract which was to contain a ninety day notice provision. We find that ninety days is the appropriate gauge of contract damages because, given the events that occurred in this case, it is both the minimum and maximum duration of the employment relationship. The plain language of the notice clause provides a minimum of ninety days of employment. Because Dr. Carlson was given effective notice before his employment actually began, ninety days is also the maximum duration of the contract.[6]

In holding this is a contract for a minimum of ninety days, we reject Dr. Carlson's contention that the terms of the form contract define the duration of his employment as one year. Dr. Carlson points to two provisions of that contract: the clause specifying an annual salary and the clause incorporating by reference the hospital staff bylaws, which provide for initial staff appointments of one year. Neither of these provisions is sufficient under Pennsylvania law to remove the contract from employment at-will by creating an annual term of employment. *See Beidler v. W.R. Grace, Inc.*, 461 F.Supp. 1013, 1015 (E.D. Pa.1978), *aff'd*, 609 F.2d 500 (3d Cir.1979) ("Stating that an employee's compensation is for a stated amount for a stated period does not make the contract one for a definite period, or even raise the presumption that the hiring was for such a period.") (citing *Trainer v. Laird*, 320 Pa. 414, 183

A. 40 (1936)); *Paul v. Lankenau Hosp.*, 375 Pa.Super. 1, 18; 543 A.2d 1148, 1157 (1988) (finding that there was no implied contract sufficient to rebut presumption of employment at will because staff privileges and hospital employment are distinct), *rev'd on other grounds*, 524 Pa. 90, 569 A.2d 346 (1990). These cases are technically distinguishable from the case before us because the notice provision takes our contract out of the at-will realm. However, we apply their reasoning and find that the form contract in this case did not create a one year term of employment.

Dr. Carlson also relies on his own impression, which he claims to have formed from a conversation with Nowlan,[7] as evidence that the contract was for a term of one year. He is unable, however, to point to any specific statement or action by Nowlan that created a reasonable understanding that this was a one year contract as required by Pennsylvania law. *See Veno*, 357 Pa.Super. at 101, 515 A.2d at 579 (vague statements by employer insufficient to create "reasonable 'understanding'" that employee would continue working for specific time). In the absence of any such evidence, we will affirm the district court's summary judgment to the extent it holds that Dr. Carlson made no showing that this was a one year employment contract.

Summary judgment is appropriate on this issue, despite the fact that Dr. Carlson seeks to introduce his own testimony as evidence. Summary judgment is inappropriate where there is an issue of credibility that is appropriate for the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202

---

terminology. We find that an employment contract with a notice provision should not be characterized as at-will. However, we agree with the result of *Cote, i.e.,* a notice provision in an employment contract creates a contract with the duration of that notice provision.

**6.** The notice provision of the contract called for written notice and the hospital only provided oral notice on May 11, 1988. Generally, courts have given little practical effect to requirements of written notice. *See, e.g., Maltby v. J.F. Images, Inc.,* 632 P.2d 646 (Colo.Ct.App.1981) (Under employment contract providing from ten days written notice, employee who received oral

notice followed by written notice was entitled to compensation from date of actual oral notice.). Given that Dr. Carlson was not harmed by the fact that he received oral, as opposed to written, notice of the hospital's breach, we decline to attach significance to the requirement of written notice.

**7.** Dr. Carlson also claims that this impression was formed, in part, from the terms of the form contract discussed above. To the extent that his impression was created by the terms of a contract which have no legal significance in Pennsylvania, we find that his impression was not reasonable.

(1986). However, there is no issue of credibility here. Even if a jury believed that Dr. Carlson thought that this was a one year contract, he has introduced nothing of legal significance which indicates that his impression was reasonable. Based on the explicit terms of the notice provision, we find there is no factual dispute that the contract contemplated a minimum term of ninety days. Dr. Carlson's purely subjective impression without any factual support amounts to nothing of legal significance and is insufficient to defeat a motion for summary judgment. *Williams*, 891 F.2d at 460.

We hold that the hospital is liable for a ninety day contract, despite the fact that Dr. Carlson never began working under this contract. By holding the hospital financially liable for an employment relationship that never began, we are not contradicting *Browne v. Maxfield*, 663 F.Supp. 1193 (E.D.Pa.1987). In *Browne*, the court held that an at-will employment contract could not be breached by anticipatory repudiation on the part of the employer. *Id.* at 1200. The court found that requiring employers to let employees actually begin their jobs before dismissing them would be a useless formality. *Id.* at 1202. Here, we are not holding that the hospital breached an at-will contract by not allowing Dr. Carlson to begin work. Rather, we hold that an employer can be held liable for a term of employment expressly promised to an employee, even if that term never actually began to run.

### IV.

In granting a summary judgment in favor of the hospital, the district court also dismissed Dr. Carlson's estoppel, fraud, negligence, and willful and wanton misconduct claims. We will affirm the district court's dismissal of these claims.

■ Dr. Carlson argues that his estoppel claim encompasses both promissory and equitable estoppel. We find that neither doctrine is applicable to this case. Promissory estoppel allows the court to enforce a party's promise that is unsupported by consideration where (1) the promisor makes a promise that he reasonably expects to induce action or forbearance by the promisee, (2) the promise does induce action or forbearance by the promisee, (3) and injustice can only be avoided by enforcing the promise. *Cardmone v. Univ. of Pittsburgh*, 253 Pa.Super. 65, 74, 384 A.2d 1228, 1233. (1978). Generally, this doctrine is invoked in situations where the formal requirements of contract formation have not been satisfied and where justice would be served by enforcing a promise. *Cardmone*, 253 Pa.Super. at 74, n. 9, 384 A.2d at 1233, n. 9 ("Promissory estoppel has been characterized as a substitute for consideration, an exception to the ordinary contract requirements, or even as a 'species of consideration'") (quoting *Fried v. Fisher*, 328 Pa. 497, 501, 196 A. 39, 42, n. 5 (1938)). In light of our finding that the parties formed an enforceable contract, relief under a promissory estoppel claim is unwarranted.

■ Equitable estoppel is not a separate cause of action. It may be raised either as an affirmative defense or as grounds to prevent the defendant from raising a particular defense. *Paul*, 375 Pa.Super. at 9, 543 A.2d at 1152. Dr. Carlson seeks to invoke equitable estoppel to prevent the hospital from denying the existence of an enforceable contract. However, the hospital bases its argument that there is no enforceable contract on Pennsylvania's employment at-will law, and Pennsylvania does not recognize equitable estoppel as an exception to employment at-will. *Paul v. Lankenau Hosp.*, 524 Pa. 90, 569 A.2d 346, 348 (1990). Furthermore, our holding on Dr. Carlson's contract claim renders his equitable estoppel claim untenable.

■ While the district court failed to address Dr. Carlson's fraud claim, its order granting summary judgment dismissed his entire complaint. Exercising plenary review of this order, we will affirm the district court's dismissal of the fraud claim. In order to sustain a cause of action for fraud, Dr. Carlson must prove, *inter alia*, that the hospital's representatives intended to deceive him when they made misrepre-

sentations regarding his eligibility for staff privileges as a family practitioner, *i.e.*, that they knew that their statements were false. *Borelli v. Barthel*, 205 Pa.Super. 442, 446, 211 A.2d 11, 13 (1965). Dr. Carlson offers no proof that could be construed to show that Dr. Derisio and Nowlan actually knew that he did not have adequate residency experience to qualify for staff privileges in his specialty when they interviewed him and offered him the job. Rather, Dr. Carlson merely argues that they *should have known* that he would be unable to satisfy the bylaws of the hospital's family practice department. Because he has made no showing that could be construed as proving the hospital intended to mislead him, summary judgment was appropriate with respect to the fraud claim.

■ Dr. Carlson also seeks recovery under a theory of negligence, alleging that the hospital was negligent in failing to ascertain that he was ineligible for staff privileges, and in failing to inform him of that fact before he accepted its offer. Recovery in negligence is not available unless the defendant owes a duty of care to the plaintiff. *Bradshaw v. Rawlings*, 612 F.2d 135, 138 (3d Cir.1979), *cert. denied*, 446 U.S. 909, 100 S.Ct. 1836, 64 L.Ed.2d 261 (1980). We have found no indication that Pennsylvania imposes a duty of care on employers toward prospective employees before the formation of an employment contract, and we decline to create such a duty. Because we find that the hospital owed a prospective employee no duty to ascertain whether he was fully qualified for the position offered, we will affirm the dismissal of the negligence claim.

■ The final count of the complaint seeks punitive damages for the hospital's "willful and wanton misconduct." In Pennsylvania, willful misconduct requires "that the actor desired to bring about the result that followed or at least that he was aware that it was substantially certain to ensue." *Evans v. Philadelphia Transp. Co.*, 418 Pa. 567, 573–74, 212 A.2d 440, 443 (1965). Wanton misconduct requires "that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it...." *Id.* Dr. Carlson argues that the hospital's agents engaged in willful and wanton misconduct by denying the formation of a contract after the inception of this law suit. The fact that the hospital initially denied the existence of a contract has no relevance to Dr. Carlson's right to relief for willful and wanton misconduct. Any cause of action Dr. Carlson might have for misrepresentations made by the hospital would arise from the statements it made before the contract was formed, not from its actions after he filed suit. As discussed in connection with the fraud claim, Dr. Carlson has made no showing that could reasonably be construed to show that the hospital made these misrepresentations knowingly or recklessly. Because Dr. Carlson has made no factual showing that the hospital had the requisite mental state for willful or wanton misconduct, we will affirm the district court's summary judgment with respect to this final count.

### V.

In conclusion, we hold that the ninety day notice provision in Dr. Carlson's employment contract removes the contract from the realm of employment at-will and creates a contract with a duration of ninety days. We will reverse the district court's summary judgment order with respect to that contract claim and remand for determination of the appropriate damages. We will affirm the order granting summary judgment with respect to all other claims.

Each party to bear its own costs.